UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Cause No. 1:23-CR-9-HAB |
| | ) |
| KELTON ANDERSON | ) |
| | ) |

**OPINION AND ORDER**

During the nearly two and a half years this case has been pending, Defendant Kelton Anderson's ("Anderson") court-appointed federal defender has engaged in extensive motions practice. Among the issues litigated have been the validity of six warrants obtained in the case. Despite the amount of ink spilled resolving these motions, Anderson argues that his appointed counsel should have done more to properly represent him. To that end, he took matters into his own hands and exercised his Sixth Amendment right to self-representation (ECF No. 149). Now before the Court is his *pro se* Motion to Dismiss for Constitutional Violation, Prosecutorial Misconduct, and Prejudicial Delay (ECF No. 163) wherein he asserts all the additional arguments his former counsel did not. The parties have fully briefed the motion (ECF Nos. 163, 173, 179, and 182). Because the Court finds that none of Anderson's latest contentions have merit, the Motion to Dismiss will be DENIED and the case set for trial.

**DISCUSSION**

The Court presumes the parties' familiarity with the basic facts of the case. Anderson faces drug and gun offenses in a three-count superseding federal indictment. (ECF No. 95). These charges stemmed from a lengthy investigation that included six search warrant affidavits submitted to state magistrates. Four warrants were for GPS vehicle tracking warrants for Anderson's white GMC Truck ("GMC Truck"). One was for the search at an apartment alleged to be Anderson's,

located on Bridgeway Drive ("the Bridgeway Apt.") in Fort Wayne, Indiana, and one was for the search of the GMC Truck and cell phones located inside that truck. As it goes in large scale investigations, each subsequent warrant built on facts supporting earlier warrants. Anderson, by counsel, filed three motions to suppress and multiple requests for *Franks* hearings. *See Franks v. Delaware,* 438 U.S. 154 (1978) (ECF Nos. 43, 44, 74, 114, 115). The Court denied them all. (ECF Nos. 64, 88, 135). Anderson, now operating as his own lawyer, takes a different approach, that is, attacking his former counsel's representation and seeking dismissal of the superseding indictment. Each of his arguments will be addressed below.

   **1. Ineffective Assistance of Counsel – Violation of the Sixth Amendment**

Anderson's opening salvo asserts that his court-appointed counsel, Michelle Kraus ("Atty. Kraus") provided constitutionally infirm representation relating to various pretrial matters. He ticks off a laundry list of items he believes she should have done on his behalf or done better on his behalf. Among other things, he asserts that she failed to challenge the vehicle detention and use of an uncertified K-9,[1] failed to raise a speedy trial violation, failed to demand DNA testing or fingerprint analysis on the firearms involved in the gun charges, and failed to move to suppress the firearms. He also asserts that her filings were "boilerplate" and "failed to address the specific facts or procedural posture of Defendant's case." (ECF No. 163 at 2).[2]

---

[1] Anderson provided the Court with the most recent certification of the K-9 that was used in his traffic stop which post-dated the date of the stop. He believes this is proof that the K-9 only became certified after the date of the traffic stop. The Government, however, has provided a prior certification of the K-9 to show that the K-9 was in fact a certified K-9 at the time of the stop and thus, there was no basis for counsel to challenge the use of an uncertified K-9. *See* ECF No. 173-1.

[2] Because the Court believes it premature to rule on the specific complaints Anderson has with counsel, the Court notes only that Atty Kraus is the assistant Federal Community Defender in this division and has been a zealous advocate for hundreds of federal defendants before the Court.

The problem with all these arguments, however, is that they are premature. "The Sixth Amendment right to effective assistance of counsel can be challenged by the defendant only when a defendant can show that, but for counsel's errors, the outcome of the proceedings would have been different. Th[is] standard makes a motion for ineffective assistance of counsel premature if it is filed prior to resolution of the criminal proceedings." *United States v. Hawkins*, 2011 WL 13183074, at *1 (W.D. Mo. Oct. 6, 2011); *see also United States v. Bonadore*, 2021 WL 1601308, at *2 (D.S.D. Apr. 23, 2021); *see generally Strickland v. Washington*, 466 U.S. 668, 687 (1984) (to show prejudice a defendant must demonstrate "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable").

Indeed, the Seventh Circuit has repeatedly noted that the proper vehicle for asserting ineffective assistance of counsel claims is via a post-conviction relief motion pursuant to 28 U.S.C. §2255, not on direct appeal or otherwise. This is because such claims "generally depend on facts outside the record, so unless the trial court already held a hearing on such a claim, they are "doomed." *United States v. Flores*, 739 F.3d 337, 341 (7th Cir. 2014) ("[W]hen an ineffective-assistance claim is rejected on direct appeal, it cannot be raised again on collateral review.").; *United States v. Cates*, 950 F.3d 453, 457 (7th Cir. 2020) ("By raising an ineffective-assistance claim prematurely, on direct appeal, a defendant can easily throw away any chance he has at success because the claim may not be presented a second time on collateral attack under 28 U.S.C. § 2255.") Thus, the Seventh Circuit has "said many times that it is imprudent to present an ineffective-assistance argument on direct appeal." *Flores*, 739 F.3d at 341; *Vinyard v. United States*, 804 F.3d 1218, 1227 (7th Cir. 2015) ("[B]ringing a premature claim for ineffective assistance of counsel on direct appeal is not prudent, and we have repeatedly cautioned defendants against raising such claims on direct appeal.").

3

Most importantly, however, is the current procedural status of this case. Anderson is now acting as his own counsel, and he has the ability to file any pretrial motions or make any arguments he believes his former appointed counsel should have raised on his behalf. He cannot demonstrate prejudice because the "outcome" of the case has yet to occur. And it is premature for this Court to consider any claims of ineffective assistance when those very arguments are capable of being cured by the Defendant himself via his own representation. The motion to dismiss based on ineffective assistance of counsel is DENIED.

### 2. Due Process Violations under the Fifth and Fourteenth Amendments

Next, Anderson asserts that he was improperly transferred from state to federal custody and that this transfer violated his right to due process under the Constitution. A review of the record shows that this is simply not the case.

Anderson was arrested on February 9, 2023, and booked into the Allen County jail on preliminary state law violations related to the current federal offenses. The next day, February 10, 2023, a series of events took place:

- Detective and Task Force Officer Darren Compton ("TFO Compton") of the Allen County Police Department (ACPD) swore to and signed an Affidavit of Probable Cause to submit to the state court judge;

- The state court conducted a probable cause hearing and made a finding of probable cause to support Anderson's arrest (ECF No. 163-1 at 3). That Order states that the case is continued for 72 hours (excluding weekends and holidays) to file formal charges against Anderson.

- The United States' Attorney's Office sent the Allen County Jail a federal hold letter indicating federal charges were forthcoming. (ECF No. 173-2).

- United States Magistrate Judge Michael Gotsch, Sr. signed a criminal complaint sworn to by TFO Compton that resulted in an arrest warrant for Anderson.

- The state moved to expunge the pending miscellaneous cause number because all state criminal charges were dismissed.

4

- The Allen County Jail then contacted the United States Marshals Service to notify it that Anderson was available for federal prosecution.

After the intervening weekend, on February 13, 2023, Anderson was taken into federal custody and moved to the Noble County Jail. His initial appearance on the federal Complaint occurred on February 14, 2023.

Anderson asserts that this series of events resulted in his unauthorized transfer to federal custody. He cites several authorities, including Fed. Crim. R. 1(a)(4), 28 U.S.C. §1651, and 28 U.S.C. §2283, none of which help him here.

The events that led to Anderson's arrest triggered the potential of separate prosecutions by separate sovereigns. Both the Indiana Code and the United States Code contain provisions relating to the drug and gun crimes alleged here. "When state and federal laws overlap, as in this case, defendants may face prosecution by both state and federal governments." Each sovereign "has independent power to investigate crimes and to make charging decisions and strategic choices." *See Gamble v. United States*, 587 U.S.678, 686 (2019). Indeed, a single act "may be an offence or transgression of the laws of" two sovereigns, and so punishable by both, *Moore v. Illinois*, 55 U.S. 13, 20 (1852).

Anderson cites to Rule 1(a)(4) and claims that his case was improperly removed to this Court. But parallel proceedings, such as the one here, are not removal proceedings and therefore the rule does not apply. *See* 28 U.S.C. §1455 (setting forth the procedure *for defendants* desiring to remove any criminal prosecution from a state court). Anderson also cites to the All Writs Act ("AWA"), 28 U.S.C. §1651 and the Anti-Injunction Act ("AIA"), 28 U.S.C. §2283 to support his arguments.

The AWA provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and provisions of law." The AIA, in turn, prohibits the Court from granting an injunction to stay proceedings in a state court proceeding unless authorized by Congress or where necessary to carry out its jurisdiction or judgments. Although his argument is murky, Anderson believes that these two statutes prohibit the federal court from assuming jurisdiction and prosecuting him. He states that the "unauthorized transfer" of his case from state to federal court "nullified proper subject matter jurisdiction under federal law." He argues that the Government had to initiate the federal prosecution through "lawful writs" or "removal procedure" (ECF No. 163 at 3).

This Court's federal criminal jurisdiction arises out of the federal statutes allegedly violated by Anderson in the superseding indictment. As the Government points out, the concept of dual sovereignty allows Anderson to be prosecuted by both sovereigns for violations of their respective criminal codes. Initially, those proceedings were brought in state court. As much as Anderson believes that the proceedings in the state court were somehow improper – i.e., that because the state court dismissed charges and the federal government simultaneously initiated charges, the two sovereigns colluded against him in violation of the Constitution – the Court does not agree. Indiana Code §35-38-9-1(b) authorizes the state court to expunge an arrest when it decides not to pursue charges or dismiss charges filed. The expungement is effective 60 days from the date of dismissal. That is what the state did. On February 10, 2023, the state dismissed the criminal charges pending against Anderson. But, the same day, the Government filed a federal complaint, the Magistrate Judge made a probable cause determination, an arrest warrant was issued, and Anderson was held in the Allen County Jail under that warrant. The U.S. Marshal took physical custody of Anderson on February 13, 2023. Because the state court had dismissed the state criminal charges, the

6

Government did not need to file a writ of habeas corpus ad prosequendum as he was being held on the federal warrant. Anderson has not shown any misconduct or violation of his due process rights.

### 3. Speedy Trial Violation – Sixth Amendment

Anderson asserts that his prolonged pretrial incarceration violates his right to a speedy trial. He contends that the delay has resulted in substantial prejudice "clearly surpassing any complexity-related justification offered by the prosecution." (ECF No. 163 at 8).

The Sixth Amendment guarantees every defendant in a criminal prosecution a fundamental right "to a speedy and public trial." U.S. Const. amend. VI; *see also Barker v. Wingo*, 407 U.S. 514, 515 (1972). The right is triggered by "an arrest, indictment, or some other official accusation." *United States v. Loera*, 565 F.3d 406, 412 (7th Cir. 2009). A long pretrial delay warrants a "searching analysis" under the factors the Supreme Court described in *Barker v. Wingo*, 407 U.S. 514 (1972) and *Doggett v. United States*, 505 U.S. 647, 651 (1992). More on those factors in a moment.

Congress enacted the Speedy Trial Act ("STA") to "implement the Sixth Amendment" right to a speedy trial. *United States v. Janik*, 723 F.2d 537, 542 (7th Cir. 1983). The STA mandates that criminal trials commence within seventy (70) days of the issuance of an indictment or a defendant's first appearance before a judicial officer, whichever occurs later. 18 U.S.C. § 3161(c)(1). If a defendant is not brought to trial within the time limit required by Section 3161, the indictment "shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). The Act, however, excludes certain periods of time from the seventy-day clock to provide the flexibility to accommodate necessary pretrial proceedings that result in justifiable delay. § 3161(h)(1)–(8). The Act provides that "[a]ny period of delay resulting from a continuance ... [is excluded] if the judge

granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." § 3161(h)(7)(A).

Anderson's motion does not expressly reference the STA, and that appears to be for good reason. From the Court's review of the case, 43 days remain on the speedy trial clock. The Government's response brief provides a lengthy and detailed recitation of the procedural timeline in this case. As that recitation makes clear, nearly all the time from the commencement of this case until now has been specifically tolled or excluded under the STA. Since his initial appearance, Anderson, through counsel, requested five continuances, all five of which included "ends of justice" findings.[3] *See United States v. Wasson*, 2009 WL 383447, at *3 (C.D. Ill. Feb. 13, 2009) (finding no STA violation where defendant either requested or did not object to continuances accompanied by "ends of justice" findings). After becoming pro se, Anderson requested another continuance to allow him time to file additional pretrial motions.

Other delays under the STA were properly attributed to Anderson based on the extensive pretrial motions filed by counsel on Anderson's behalf as well as the hearings on those motions. (ECF Nos. 43, 44, 74, 79, 114, 115, 163); so, too delays caused by his requests for new counsel were also excluded (ECF No. 139, 145). Anderson's motion offers no specific challenge to any period of the excluded time and thus, by the Court's calculation, the speedy trial clock has not yet expired. Accordingly, the Court concludes that no violation of the STA has occurred.

This conclusion gets the Court back to Anderson's true argument that the long post-indictment delay violates the Sixth Amendment. Four factors govern this analysis: "whether delay

---

[3] Anderson did object to two of the five continuances. (ECF No. 32, 91). The Court held an in-person hearing to address his objection (ECF No. 34). After hearing from the parties, the Court determined that the continuance requested by his counsel was appropriate. The Court made an ends of justice finding in light of the explanation provided by counsel at the hearing and in the motion. (ECF No. 35). In the second instance, the Court also found a brief 30-day continuance appropriate and made an ends of justice finding. (ECF No. 92).

before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett*, 505 U.S. at 651.

The Government's brief balances each of the factors above. The Government acknowledges that the first factor – the length of the delay – weighs favorably to Anderson. But both the Court and the Government agree that the remaining factors do not. The delay in this case is attributable to the Defendant. As explained above, the delays attributable to continuances, pretrial motions, and to substitute counsel were not caused by any action on the part of the Government but were part of a defense strategy. And although Anderson asserted his speedy trial rights by sending letters to the Court (ECF No. 30, 93), each time he acted contrary to those assertions by filing new pretrial motions or filing motions to substitute counsel. *See United States v. Taylor,* 196 F.3d 854, 862 (demand for a speedy trial that is inconsistent with a defendant's own efforts to delay proceedings entitled to little weight). Finally, Anderson has not demonstrated any prejudice from the delay. In fact, the delay allowed him to present all his pretrial arguments to the Court, preserve those arguments for appeal, and become more familiar with the evidence in the case. Accordingly, because the balancing of the factors weigh against Anderson, the Court finds no Sixth Amendment violation.

4. ***Staleness of Evidence***

Anderson next objects to what he sees as a "delay in DNA collection." He argues that he was served with a warrant to obtain his DNA in March 2025 and the delay in performing DNA testing on the firearm "represents a fundamental breach of Fourth Amendment protections." (ECF No. 163 at 5). He argues that the remedy for this breach is dismissal of the case.

In response, the Government lays out some operative facts: On February 9, 2023, law enforcement executed the warrant for the Bridgeway Apt. Anderson was observed leaving the apartment and driving away in a vehicle just before the warrant's execution. Anderson's vehicle was stopped and he was detained while the search of the apartment continued. Inside the residence, several officers recovered three firearms, including a Glock Model 21 Gen 4, .45 caliber pistol ("Glock"), a Ruger Model LCR 38 Special .38 caliber pistol ("Ruger"), and a Sphinx Model SDP Compact Pistol ("Sphinx"). The Glock and the Sphinx were swabbed for the collection of DNA on February 14, 2023, and the swabs placed into evidence in the property room at the Fort Wayne Police Department. The Ruger was not swabbed at the time it was recovered. During trial preparation, the Government became aware of the swabs collected from the Glock and the Sphinx. The Government then requested and obtained a search warrant for Anderson's DNA on March 26, 2025. (ECF No. 175).

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and requires that warrants issue only upon probable cause. U.S. Const. amend. IV. It is well-established law that the Fourth Amendment is implicated when a search involves an intrusion into the human body. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 616–17 (1989) (breathalyzer and urine sample); *Cupp v. Murphy,* 412 U.S. 291, 295 (1973) (fingernail scrapings); *Schmerber v. California,* 384 U.S. 757, 767–71 (1966) (blood). Moreover, just as "[s]earch warrants are ordinarily required for searches of dwellings ... absent an emergency, no less could be required where intrusions into the human body are concerned." *Schmerber,* 384 U.S. at 770. "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.*

Probable cause exists for a search warrant where "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or *evidence of a crime* will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 239 (1983) (emphasis added)). Thus, the issuance of a search warrant for DNA is only proper where the affidavit supporting the application provides a basis for believing that the individual's DNA can link the individual to a criminal act. *See, e.g.*, *United States v. Bonds,* 12 F.3d 540, 549 (6th Cir.1993) (affirming magistrate finding of probable cause to issue a search warrant for blood and hair samples when affidavit established that DNA could link the suspect to blood stains found in a car used in connection with a homicide); *United States v. Solomon,* 2007 WL 927960, at *4 (W.D.Pa. 2007) (where there was probable cause to believe that defendant handled the 9mm Glock handgun used in a homicide, and from which a DNA "swipe" had been obtained, affidavit alleged facts sufficient to establish probable cause that defendant's genetic material would be linked to evidence from the crime).

Anderson has not formally moved to suppress the DNA evidence obtained from him nor does the Court view his challenge to be directed at the probable cause determination of the magistrate judge. Rather, the sole argument he makes is for dismissing the criminal case because he believes the delay between the Government's collection of his DNA and the date that the firearms were removed from his residence is too great. But "the length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). And the determination of whether events relayed in an affidavit are stale are informed by many factors, including the character of the crime, the nature of the thing to be seized, and the place searched. *Id.*

The evidence being seized through the search warrant is Anderson's own DNA. This evidence did not degrade or change between the time of Anderson's arrest, the time the firearms

were seized or at the time the search warrant was sought. Further, the DNA comparison is for firearm evidence that was seized pursuant to a valid warrant in February 2023 and swabbed for DNA evidence less than a week later. The DNA collected from the firearms occurred close in time to the search and the evidence was secured in the property room since its seizure. The only question that remained was whether probable cause existed to believe that Anderson's DNA might be found on the seized firearms. The Government presented information to the Magistrate Judge in the search warrant affidavit from the investigation which the judge found sufficient to determine that probable cause existed to permit Anderson's DNA to be taken and compared to the DNA swabs from the firearm. The Court fails to see any validity to Anderson's staleness arguments that would warrant dismissal of the indictment.

    5. **Brady** *Violation & Prosecutorial Misconduct*

Anderson's next barrage of complaints relates to discovery. Discovery in criminal cases arises from the Due Process Clause, Federal Rules of Criminal Procedure 16 and 26.2, and the Jencks Act, 18 U.S.C. § 3500. Criminal defendants are entitled to disclosure of exculpatory evidence from the Government that is material to the defendant's case. *Brady v. Maryland,* 373 U.S. 83, 87 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."). *Brady* established a criminal defendant's right to exculpatory evidence that has a reasonable likelihood of affecting the outcome of the case as to guilt or punishment. *United States v. Bagley*, 473 U.S. 667, 675 (1985). A defendant's right to discovery under *Brady* is limited to what is required for a fair trial; it does not create a general right to discovery of exculpatory or other evidence. *Bagley*, 473 U.S. at 675 ("The prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant

of a fair trial."); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.").

Anderson asserts that the Government failed to disclose the following: (1) fingerprint and DNA test results of the firearms; (2) identity of individual observed entering the apartment in surveillance reports in July 2021; (3) K9 certification deficiency; and (4) certain surveillance records. He contends that each of these items is material under *Brady* because "they either contradict the prosecution's central narrative or would have supported a viable defense theory had they been disclosed." (ECF No. 163 at 8).

In response, the Government addresses each of these categories. For the DNA evidence, the Government represents that test results for the Glock and the Sphinx were given to the Defendant on May 5, 2025. The Ruger was not tested. The Government represents that fingerprint analysis was not performed on any of the firearms. Since this discovery has been provided or does not exist, no *Brady* violation exists.

Next, the Government acknowledges that in July 2021, law enforcement conducted a wiretap investigation in which DEA Task Force Office Peter Mooney observed a money pickup by another target of the investigation from the Bridgeway Apt. The Government disputes that this evidence is favorable, *see Turner v. United States*, 137 S.Ct. 1885, 1893 (2017) (evidence is favorable if it is either exculpatory or impeaching), but also acknowledges that "[e]vidence need only have 'some weight' or 'tendency' to be favorable to the defendant." *United States v. Ballard*, 885 F.3d 500, 504 (7th Cir. 2018) (quoting *Kyles v. Whitley*, 514 U.S. 419, 455 (1995)). For this reason, the Government indicates it will work on finding out the identity of the male target and provide that information to the Defendant.

13

As for failing to disclose K9 Django's police dog credentials, the Government represents that it provided a correct K9 certification to Anderson on May 5, 2025, and attached it to the Government's response brief as an exhibit as well. Thus, it appears any discovery issue is resolved.

Finally, the Court does not understand Anderson's last allegation of a *Brady* violation – that is reports related to surveillance gaps. Anderson suggests that there might be surveillance reports where the Government did not observe anything. But that raises the question of why the Government would create a report of what it did not see. The Government appears confused as well but indicates that if Anderson believes that there are gaps in the investigation, that is a subject that he can explore on cross-examination at trial. The Government further indicates that if there are any additional surveillance reports to turn over, the Government will provide them in compliance with the *Jencks Act* by the Friday before trial. If Anderson believes that there were reports not disclosed, this is the subject of cross-examination at trial. The Court does not find any *Brady* violations that would warrant dismissal.

### 6. *Indictment Fails to State a Legally Sufficient Claim*

Lastly, Anderson challenges the content and allegations in the Superseding Indictment. Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to challenge the legal sufficiency of an indictment for lack of specificity or failure to state an offense, among other things. "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) (citation and quotation marks omitted).

On its face, Anderson's motion challenges the strength of the Government's case against him and raises factual defenses to the charges contained in the Superseding Indictment. As to the drug charge, he states that the Government has not provided "sufficient evidence of Defendant's knowing possession or intent to distribute narcotics" because the "Defendant was not found with narcotics on his person or immediate vicinity during arrest." Rather, he argues that items were found "later in a separate apartment, not leased in Defendant's name, in a locked safe." As for the gun charges, he argues that the Government "fails to articulate sufficient evidence establishing Defendant knowingly exercised dominion/control" and that the indictment fails to explicitly establish "any factual nexus between Defendant's alleged firearm possession and drug trafficking." (ECF No. 163 at 9).

Factual challenges such as the ones raised by Anderson test the strength of the Government's case and are not proper challenges to the Indictment itself. This is because factual defenses are for a jury, not the Court, to decide. Thus, a defendant seeking pre-trial dismissal ordinarily may not "transcend the four-corners of the indictment." *United States v. DiFonzo*, 603 F.2d 1260, 1263 (7th Cir. 1979); see also *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case."); *United States v. Yasak,* 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a summary trial of the evidence. Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged.") (internal citation and quote marks omitted).

A cursory review of the four corners of the Superseding Indictment shows that it complies with Rule 7(c)(1). It identifies the elements of the crimes charged, informs the defendant of the nature of the charges so he can prepare a defense, and allows the defendant to plead the judgement

as a bar against future prosecutions for the same offense. For this reason, the Superseding Indictment is proper and the Defendant's factual challenges to the Indictment are issues for the jury to decide at trial.

### 7. *Miscellaneous Other Issues*

Anderson's motion addresses a few more issues that fall outside the above categories of complaints. He repeats an argument previously made that his right to self-representation is being impaired because the Court issued an order in response to the Government's Motion for Protective Order that restricted his ability to share certain confidential information in his discovery with his family members. Other than to list this as an ongoing complaint, Anderson has not provided any detail about how the protective order impairs his right to self-representation or why his family would need access to the protected materials. This Court explicitly addressed this concern in an Opinion and Order at ECF No. 162. The relevant portions of that Order are repeated below:

> The Sixth Amendment guarantees a criminal defendant the right to self-representation at trial, provided the defendant is mentally competent and fully informed about the consequences of self-representation, voluntarily and intelligently waives the benefits of legal counsel, timely and unequivocally invokes the right, is willing to abide by courtroom protocol, and does not assert the right for the purpose of delay. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975). However, "when an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta v. California*, 422 U.S. 806, 835 (1975). Indeed, self-representation necessarily entails certain risks and disadvantages.
> 
> That said, denying a self-represented criminal defendant the ability to prepare for trial can effectively abrogate his constitutional right to self-representation. *See Powell v. Alabama*, 287 U.S. 45, 59 (1932) ("It is vain to give the accused a day in court, with no opportunity to prepare for it, or to guarantee him counsel without giving the latter any opportunity to acquaint himself with the facts or law of the case."). And thus, to prepare for trial, a criminal defendant is entitled to certain discovery materials from the Government. Fed. R. Crim. P. 16(a). However, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). That is what occurred here. In this case, Anderson is entitled to discovery materials to prepare his defense. But the Court has granted the Government's motion for a

> protective order for disclosure of discovery materials to unauthorized persons. The Court, in doing so, balanced Anderson's entitlement to discovery with the need to protect certain information.
>
> Anderson has not asserted that he cannot access his discovery. Nor has he set forth any appropriate basis for disclosing the discovery materials to his family members. There is no Sixth Amendment right that a defendant may insist on representation by a person who is not a member of the bar. Nor does he have a Sixth Amendment right to research or preparatory materials from others. The *Faretta* right to self-representation does not encompass a corresponding right to ancillary services such as investigative or paralegal assistance. "The rule is that [the defendant] has the right to legal help through appointed counsel, and when he declines that help, other alternative rights… do not spring up." *United States v. Byrd,* 208 F.3d 592, 593 (7th Cir. 2000) (right to access to a law library). Rather, as a self-represented defendant, it is Anderson's duty to pursue his own best interest in connection with this case and control "the organization and content" of his defense. *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) (self-representation requires that the pro se defendant "be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."). Anderson has not asserted that the scope of the protective order inhibits his ability to do this.
>
> Further, Anderson is currently housed as a pretrial detainee at the Huntington County Jail. In its response, the Government represents that it spoke with the Huntington County Jail Commander and inmates at the jail have access to a digital law library called Fastcase, free of charge. Fastcase is a "whole national law library on your desktop, with online access to a legal research database of cases, statutes, regulations, court rules, and bar publications . . ." Fastcase, Scope of Coverage, WWW.FASTCASE.COM, https://www.fastcase.com/coverage/ (last visited May 8, 2025). Anderson also has access to pencils, paper, and stamped envelopes free of charge so that he may file motions with the Court. Simply put, Anderson has not demonstrated how the existence of the protective order has impacted his right to self-representation.
>
> Finally, as the Government acknowledges, the protective order does not prohibit Anderson from consulting with his family and using them as support. Rather it only bars discussion and sharing of the protected materials. (Gov't Resp. at 5). The Court finds compelling the Government's concerns over the safety of those involved in the case as investigators, witnesses, and confidential sources and, for this reason, Anderson's request to vacate or modify the protective order is DENIED …

(Opinion and Order ECF No. 162 at pp. 2-4). Given that Anderson has provided no more information to the Court that would warrant a different outcome, the above ruling remains in place.

Anderson also asserts that all the warrants in this case are invalid because they were not timely filed in the state court as required by Ind. Code §35-33-5-2(a). But the Indiana Supreme Court holds that "when a copy of an affidavit 'was delivered' to the authorizing judge, it was 'filed' with a proper officer under the Indiana statute." *State v. W.R.,* 148 N.E.3d. 306 (Ind. 2020) ("Today we reaffirm that providing a copy of an affidavit to the warrant-issuing judge satisfies the plain language of Indiana Code subsection 35-33-5-2(a)."). This Court has reviewed all the warrants in this case and, as the Government correctly points out, each warrant recites that the affidavit was filed with the issuing judge. *See* ECF No. 47, 74-1, 105 (showing all four tracking warrants). The warrants were timely filed in the state court as required by statute.

Third, Anderson argues, with no authority in support, that a federal prosecution cannot be based on evidence derived from state-issued search warrants. This Court has determined the state-issued warrants are valid and therefore the federal prosecution, which was derived from evidence from the state-issued warrants, is not defective and the superseding indictment will not be dismissed.

## **CONCLUSION**

Having reviewed all the Defendant's arguments, alone and in combination, the Court finds that none warrant dismissal of the superseding indictment. Defendant's Motion to Dismiss for Constitutional Violation, Prosecutorial Misconduct, and Prejudicial Delay (ECF No. 163) is DENIED. A scheduling order shall issue by separate docket entry.

SO ORDERED on August 15, 2025.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT