UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CASE NO. 1:23-CR-9-HAB-ALT |
| KELTON D ANDERSON, | |

## OPINION AND ORDER

Defendant Kelton Anderson, ("Anderson") is charged with a host of gun and drug charges. Nearly two years after Anderson's arrest, the Government sought a warrant to obtain a buccal swab from Anderson to test for DNA evidence to connect him to the firearms seized in the case. Anderson, proceeding as his own counsel, filed a "Motion to Suppress DNA Evidence, and, in the Alternative, for a Rule 702/Daubert Hearing and Targeted Limits" (ECF No. 189). He asserts that the warrant affidavit submitted to the Magistrate Judge failed to establish probable cause and that the swearing officer omitted information material to the probable cause finding. In the event that the Court does not suppress the evidence, Anderson seeks a *Daubert* hearing pursuant to Fed. R. Evid. 702, presumably to challenge the reliability of the DNA results. The Government responded in opposition to the motion to suppress to which Anderson replied. (ECF Nos. 192, 201).

Because the warrant affidavit submitted for the buccal swab amply supported the Magistrate Judge's probable cause finding and Anderson has not made the substantial preliminary showing required for a *Franks* hearing, the Motion to Suppress the DNA evidence obtained from the swab will be DENIED. The alternative request for a *Daubert* hearing will remain under advisement and the Government will be ordered to respond to the request.

## SEARCH WARRANT AFFIDAVIT

On March 26, 2025, detective and task force officer Darren Compton ("TFO Compton") swore a warrant affidavit (Affidavit, ECF No. 175) to obtain a buccal swap from Anderson. Following a summary of his extensive law enforcement experience and his personal knowledge of, and involvement in, the investigation involving Anderson, TFO Compton swore to the following[1]:

On February 9, 2023, law enforcement executed a warrant for an apartment located on Bridgeway Drive ("Bridgeway Apt."). The Bridgeway Apt. was believed, based on the then-ongoing investigation, to be Anderson's residence.

During the execution of the search warrant officers located a safe inside the apartment. Inside the safe, the officers located fentanyl weighing 332.2 grams; a bag containing fentanyl and fluorofentanyl with a weight of 816.61 grams; two bags containing a white powder, one containing cocaine 124.69 grams (the other bag was examined and not tested and had a gross weight of 126.81 grams); and a bag containing 31.89 grams of cocaine. Officers also located approximately 1,639 grams of marijuana inside a suitcase. A box was recovered that contained three bags of narcotics and a razor blade along with a Visa Debit card with Anderson's name on it. Officers also located a receipt from ABC Warehouse from 7-22-21 which had listed "Bill to" and "Ship To" with Anderson's name as well as the Bridgeway Apt. address that law enforcement was searching. Inside the apartment the officers located drug ledgers, digital scales, a money counter, plastic bags, rubber bands, seven large, sealed bottles of Inositol (which is a common cutting agent for narcotics), BMV paperwork for Anderson, and Anderson's Bureau of Prison identification card. Officers recovered three firearms, including a Glock Model 21 Gen 4, .45 caliber pistol ("Glock"), a Ruger Model LCR 38 Special .38 caliber pistol ("Ruger"), and a Sphinx Model SDP Compact

---

[1] For brevity, the Court has summarized the facts contained in the warrant affidavit.

Pistol ("Sphinx"). The Glock and the Ruger were both reported stolen through the Fort Wayne Police Department. The Ruger was located inside the safe with the narcotics. An interstate nexus examination was completed and none of the firearms were manufactured in the state of Indiana.

Details of Anderson's criminal history are included in the affidavit. Anderson is prohibited from possessing a firearm, having previously been convicted of felonies in 2004 and 2017 in Indiana state court, as well as in 2008 in the Northern District of Indiana. Case numbers and conviction dates are also included. The Magistrate Judge was also advised of Anderson's indictment and superseding indictment in the present case.

Based on his years of experience, TFO Compton represented that firearms are tools of the drug trade as narcotics traffickers often have one or more firearms to protect their drug stash and proceeds from others in the drug trade. He further indicated that the presence of firearms in close proximity to drugs is evidence that the firearms were possessed to further a drug trafficking crime.

TFO Compton indicated that the Glock and the Sphinx were swabbed for the collection of DNA on February 14, 2023, and the swabs placed into evidence in the property room at the Fort Wayne Police Department. Specifically with respect to DNA collection, TFO Compton

> knows the Indiana State Police Laboratory provides DNA analysis from a variety of sources, including blood and blood stains, semen and semen stains, epithelial cells, skin and other tissues, bones, organs, and hair. When DNA standards are available from a known source, like this case, DNA analysis of an item of evidence can potentially distinguish between a person who could have contributed to a DNA profile (inclusion) and a person who could not (exclusion). DNA standards from living individuals can be collected through oral/buccal swabs (i.e. swabbings from inside a person's cheek). The samples are air dried and sealed in an evidence envelope to be sent as a standard for comparison purposes.

(Affidavit, at 7). The warrant affidavit sought the assistance of a crime scene technician to collect a buccal swab from Anderson and submit it to the Indiana State Police Laboratory for comparison to the samples collected from the Glock and the Sphinx.

Based on the charges in this case and the circumstances set forth in the warrant affidavit, TFO Compton averred that he had probable cause to believe that a DNA sample from Anderson would yield evidence of a crime, specifically violations of 18 U.S.C. §922(g) and §924(c). From the above information, Magistrate Judge Susan Collins found probable cause to issue the warrant authorizing the buccal swab. Anderson's motion challenges this finding.

## **DISCUSSION**

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and requires that warrants issue only upon probable cause. U.S. Const. amend. IV. It is well-established law that the Fourth Amendment is implicated when a search involves an intrusion into the human body. *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 616–17 (1989) (breathalyzer and urine sample); *Cupp v. Murphy,* 412 U.S. 291, 295 (1973) (fingernail scrapings); *Schmerber v. California,* 384 U.S. 757, 767–71 (1966) (blood). Moreover, just as "[s]earch warrants are ordinarily required for searches of dwellings ... absent an emergency, no less could be required where intrusions into the human body are concerned." *Schmerber,* 384 U.S. at 770. "The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Id.*

Probable cause exists for a search warrant where "given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 239 (1983). Thus, the issuance of a search warrant for DNA is only proper where the affidavit supporting the application provides a basis for believing that the individual's DNA can link the individual to a criminal act. *See, e.g.*, *United States v. Bonds,* 12 F.3d 540, 549 (6th Cir.1993) (affirming magistrate finding of probable cause to issue a search warrant for blood and hair samples when affidavit established that DNA could link the suspect to

blood stains found in a car used in connection with a homicide); *United States v. Solomon,* 2007 WL 927960, at *4 (W.D.Pa. 2007) (where there was probable cause to believe that defendant handled the 9mm Glock handgun used in a homicide, and from which a DNA "swipe" had been obtained, affidavit alleged facts sufficient to establish probable cause that defendant's genetic material would be linked to evidence from the crime).

Anderson asserts that the warrant affidavit failed to support a probable cause finding because it "rested on stale, non-particularized assertions and omitted material facts about the underlying DNA evidence (mixtures, transfer risk, multi occupancy, handling chain issues)." (ECF No. 189, at 1). To oversimplify, Anderson believes that the affidavit failed to include facts showing that other individuals were observed in the apartment during the investigation and the firearms had been "passed through multiple handlers and locations." He also claims that the two-year gap between the seizure of the firearms and the request for the warrant is based on stale evidence. He seeks a *Franks* hearing on these alleged omissions.

Simply put, Anderson is not entitled to a *Franks* hearing. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" that the warrant application contained a *material* falsity or omission that would alter the issuing judge's probable cause determination, and that the affiant included the *material* falsity or omitted information intentionally or with a reckless disregard for the truth. *United States v. Coleman,* 138 F.4th 489, 506-07 (7th Cir. 2025) (emphasis added). These elements are hard to prove, *United States v. Slizewski*, 809 F.3d 382, 384 (7th Cir. 2016), and Anderson has not met his burden. He has produced no evidence of any material falsities or omissions in the warrant affidavit nor does he make any showing that TFO Compton intentionally lied or omitted information to obtain a probable cause determination. Rather, as set out below, the probable cause finding is sound.

The Court looks to the four corners of the warrant affidavit to determine whether probable cause exits. Here, there is no question that the facts in the warrant affidavit were more than sufficient to give rise to probable cause that evidence of Anderson's DNA might be found on firearms found in an apartment linked to both him and significant drug trafficking. The affidavit contains numerous facts including that during the search substantial evidence of drug trafficking was located, along with items, such as a Visa card and BOP ID bearing Anderson's name. Likewise evidence of a receipt connected Anderson's name and the Bridgeway Apt. address. This information, at the very least, suggests Anderson spent time at the Bridgeway Apt, and at most, that he lived there. The affidavit therefore details some evidence linking Anderson to drug trafficking activities at the Bridgeway Apt. These facts establish a fair probability DNA from Anderson might match DNA evidence taken from the firearms seized from the house.

This Court defers to the warrant-issuing judge's determination of probable cause if there is substantial evidence in the record to support the decision. *United States v. Koerth,* 312 F.3d 862, 865 (7th Cir. 2002). When an affidavit is the only evidence presented to a judge to support a search warrant, as it is here, the validity of the warrant hinges on the strength of the affidavit. *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009). A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk*, 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003)). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted). That burden was

met here. *See, United States v. Cesario*, No. 14-CR-92 PJS, 2014 WL 3577436, at *10 (D. Minn. July 18, 2014) (concluding that the "buccal swab warrant was supported by probable cause because there was a fair probability that the DNA evidence sought would yield evidence of a crime," and defendant's DNA sample was "necessary to compare with 'any DNA that may' be recovered from" handgun).

Anderson has one overarching problem evident from his most recent string of filings. He is trying to argue the weight of the evidence against him in his various motions. Although he has tried, Anderson can point to nothing false or omitted in this warrant affidavit (or any of the others he has challenged) that is *material*. To the extent that he believes there are omissions in this warrant affidavit, those omissions do not negate the probable cause determination *as to him* and *his* DNA. What Anderson is really seeking to challenge is the weight of the DNA evidence. But the weight of the evidence against him must be evaluated at trial, not through motions to suppress. For instance, Anderson argues about chain of custody. But "[c]hain of custody issues are jury questions and the possibility of a break in the chain of custody goes to the weight of the evidence, not its admissibility." *See United States v. Allen*, 619 F.3d 518, 525 (6th Cir. 2010); *United States v. Dewitt*, 943 F.3d 1092, 1098 (7th Cir. 2019) ("Any gaps in the chain of custody or speculative claims of tampering go to the weight of the evidence rather than its admissibility.").

Likewise, Anderson argues that others were in the Bridgeway Apt. suggesting that their DNA might be on the firearms. But, even if this is true, possession of an object can be joint. *United States v. Morris*, 349 F.3d 1009, 1014 (7th Cir. 2003) ("As we have stated many times, possession 'may be either actual or constructive and it need not be exclusive but may be joint.'")(quoting *United States v. Garrett,* 903 F.2d 1105, 1110 (7th Cir.1990)). The fact that other individuals were observed in the apartment during the investigation may, at trial, be important but what these facts

do not accomplish is undermining the conclusion that DNA evidence might link Anderson's DNA to a firearm he is not permitted to possess.[2] And that is the ball game. The Motion to Suppress DNA (ECF No. 189) as well as the request for a *Franks* hearing are DENIED.

### *Daubert* Hearing Request

Alternatively, Anderson asks for a pretrial hearing under Fed. R. Evidence 104(a), 702, and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579 (1993) to "ensure Rule 702 is satisfied as applied." Anderson states "the government must demonstrate that its expert opinions are the product of reliable principles reliably applied to these specific samples and conditions." (ECF No. 189, at 7). In its response, the Government indicated that it was premature to schedule a hearing until the Court ruled on the Motion to Suppress DNA evidence. The Government did not indicate whether it objected to a hearing.

The Court has not been provided with the DNA results from any forensic DNA analyst so it is unaware of the conclusions that the Government will present at trial. That said, "[t]he admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert* []" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). Trial judges act as gatekeepers to screen expert evidence for relevance and

---

[2] Anderson also argues that the evidence used to obtain the warrant is stale. The Court does not understand this argument since the character and nature of DNA evidence is that it remains unchanged over time. So even if his complaint is that there was a two-year delay in collecting his DNA, the Court does not see how that matters. The Court previously addressed this argument in its Opinion and Order at ECF No. 183:

> The evidence being seized through the search warrant is Anderson's own DNA. This evidence did not degrade or change between the time of Anderson's arrest, the time the firearms were seized or at the time the search warrant was sought. Further, the DNA comparison is for firearm evidence that was seized pursuant to a valid warrant in February 2023 and swabbed for DNA evidence less than a week later. The DNA collected from the firearms occurred close in time to the search and the evidence was secured in the property room since its seizure. The only question that remained was whether probable cause existed to believe that Anderson's DNA might be found on the seized firearms.

(ECF No. 183 at 11-12).

reliability. *Daubert*, 509 U.S. at 589. Rule 702 gives district courts "broad latitude" to structure proceedings concerning expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999). The district court's gatekeeping can be performed through numerous procedures – such as motion in limine briefing and oral argument, voir dire, and cross-examination at trial. *See, e.g., United States v. Calderon-Segura,* 512 F.3d 1104, 1108-10 (9th Cir. 2008)*(quoting Kumho,* 526 U.S. at 152, and noting that wide latitude is afforded judges to determine the process to assess the reliability of expert testimony). The Court may, but is not required to, conduct a *Daubert* hearing. *See Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004) ("[A] *Daubert* hearing is [not] always required."); *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998) (no automatic entitlement to a *Daubert* hearing because the Seventh Circuit has "not required that the *Daubert* inquiry take any specific form").

Under Rule 702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if the following conditions are satisfied:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In other words, "the key to the gate is not the ultimate correctness of the expert's conclusions ..., it is the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013). In evaluating the expert's proposed testimony, the Court should "scrutinize proposed expert witness testimony to determine if it has the same level of intellectual rigor that characterizes the practice of an expert in the relevant field

so as to be deemed reliable enough to present to a jury." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (internal quotation marks omitted).

Having set forth this standard, the Court directs the Government to file a response within 14 days to the Defendant's request for a *Daubert* hearing relating to the DNA evidence. That response should include basic information as to the qualifications of its DNA expert, the DNA results/report, and, if available, the methodology employed by the analyst who examined the DNA in this case. The Government should also provide its position as to whether it believes a *Daubert* hearing is required or necessary in this case or whether the reliability of its expert can be determined through some other method.

Within 10 days following the Government's response, Anderson is directed to file a reply addressing the evidentiary challenges to the qualifications of the Government's expert and/or reliability of the Government's DNA evidence he seeks to raise at any *Daubert* hearing. Anderson is reminded that arguments that the jury should disbelieve the DNA evidence or directed at the results' accuracy are not addressed through *Daubert*. Arguments of that ilk are to be addressed through cross-examination as they do not render the testimony inadmissible. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Once the Court has briefing on the request for a *Daubert* hearing it will make a determination on whether a *Daubert* hearing should be scheduled.

## **CONCLUSION**

Based on the foregoing, the Court DENIES the Motion to Suppress DNA Evidence and the request for a *Franks* hearing (ECF No. 189). The Court continues to take under advisement the

Defendant's alternative request for a *Daubert* hearing contained in ECF No. 189. The Court directs briefing as set forth in this Opinion and Order.

**SO ORDERED** this 24th day of November 2025.

                                                  s/Holly A. Brady
                                                  CHIEF JUDGE HOLLY A. BRADY
                                                  UNITED STATES DISTRICT COURT